IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **FILED** |
| GASTON PREMIER HOMES, LTD. | § | AUG 7 2009 |
| f/k/a GASTON & ROMELL PREMIER | § | U.S. BANKRUPTCY COURT |
| HOMES LTD., | § | CASE NO. 09-11903CG  BY _____ DEPUTY |
| | § | Chapter 7 |
| DEBTOR. | § | |
| | § | |

## JOINT MOTION OF CREDITOR RICHARD JOHNSON AND RECEIVER GUILLERMO OCHOA-CRONFEL TO DISMISS THIS BANKRUPTCY CASE

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW Judgment Creditor, Richard Johnson ("Johnson") and State Court-Appointed Receiver, Guillermo Ochoa-Cronfel ("Receiver") (together, "Movants") "to submit this joint motion to dismiss this bankruptcy case.

1. This case should be dismissed because Petitioner, Gaston Premier Homes, Ltd., filed this voluntary Chapter 7 bankruptcy proceeding in bad faith and without the permission of the Receiver. Currently, the Receiver has control of all non-exempt assets of Gaston Premier Homes, Ltd., including all contracts and accounts receivable, securities (stocks and bonds), documents of title, causes of action and/or chose of action, which are held in *custodian legis* by the Receiver, pursuant to Order for Turnover Relief entered on or about September 9, 2008, in Cause No. D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd.;* in the 250th Judicial District Court of Travis County, Texas. *See Exhibit 1(A).*

2. William R. Gaston ("Gaston") filed the voluntary bankruptcy on behalf of Gaston Premier Homes, Ltd. to stall the Receiver's efforts to hold Gaston personally liable for the debt knowing that the Receiver had located and filed a *Lis Pendens* against real property held in Gaston's name upon which Gaston Premier Homes, Ltd. has a claim or interest. *See Exhibit 1.* Specifically, Gaston holds title to a non-exempt, non-homestead, lake house located at 312 Camino Arbolago, Lakeway, Texas, (the "Lake House"). The Lake House is currently listed for

AU-213327 v3 2616787-00011

sale, by Gaston, and is the subject of the Receiver's pending lawsuit against Gaston, individually, styled *Gaston Premier Homes, Ltd., d/b/a Gaston Premier Homes and Guillermo Ochoa-Cronfel v. William Gaston,* in the 53rd Judicial District Court of Travis County, Texas, filed on March 9, 2009. *See Exhibit 1.*

3.  The sole purpose of this bankruptcy filing was to delay Johnson's collection of his judgment obtained against Gaston Premier Homes, Ltd., to thwart Gaston's potential personal liability for said judgment, and to allow Gaston's subsequent sale of the Lake House without a judgment lien and/or interference of the Receiver.

## PARTIES

4.  Movants are Judgment Creditor, Richard Johnson and the State Court Appointed Receiver, Guillermo Ochoa-Cronfel, as set forth above.

5.  Petitioner, Gaston Premier Homes, Ltd., was first registered as Gaston & Romell Premier Homes, Ltd., in April 2000. In June of 2004, Gaston caused to be filed a Certificate of Amendment changing the name of the company to Gaston Premier Homes, Ltd., and designating the sole general partner as Gaston GP1, L.L.C., of which Gaston is the sole managing member. The company has operated out of Gaston's personal residence, located at 17220 Rocky Ridge, Rd., Austin, Texas, ever since. In 2007, Gaston Premier Homes, Ltd., had deposits in its Compass Bank Checking Account in the total amount of $1,169,732.44. *See Exhibit 1(D).*

## UNDERLYING DISPUTE

6.  On or about April 26, 2005, Johnson and Gaston Premier Homes, Ltd., entered into a residential construction contract under which Gaston Premier Homes, Ltd., contracted to construct a single-family residence for Johnson at 315 Camino Arbolago, Austin, Texas 78734 (the "Project"). Both during and after construction, Johnson alerted Gaston of numerous construction defects in connection with the Project, yet Gaston failed to remedy these defects.

7.  On November 2, 2007, Johnson filed with the American Arbitration Association his Demand for Arbitration, and on March 31, 2008, the arbitrator issued an award requiring

AU-213327 v3 2616787-00011

2

Gaston Premier Homes, Ltd., to pay Johnson the sum of $40,112.50. When Gaston Premier Homes, Ltd. failed and refused to pay the award, Johnson filed a lawsuit to confirm the arbitration award. That suit, styled Cause No. D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd.;* in the 250th Judicial District Court of Travis County, Texas, was filed on April 28, 2008.

8. On July 28, 2008, the court entered a final judgment against Gaston Premier Homes, Ltd., awarding Johnson damages, attorney's fees, court costs, and interest totaling $43,001.60. Post-judgment interest continues to accrue at the rate of 5% to be compounded annually. To date, that judgment remains unsatisfied.

## **PENDING MATTERS**

9. On our about September 9, 2008, Johnson applied for and obtained an Order for Turnover Relief appointing Guillermo Ochoa-Cronfel as Receiver to assist in collecting the judgment obtained in the underlying matter.

10. During the course of his duties, the Receiver obtained taped recordings of conversations with Gaston, bank documents, and invoices showing that Gaston used more than $93,989.75 from Gaston Premier Homes, Ltd., business checking account at Compass Bank, to design and construct Gaston's Lake House. Those same documents show Gaston caused more than $24,550.00 from Gaston Premier Homes, Ltd.'s, business checking account, at Compass Bank, to be loaned to Gaston's other d/b/a Wet-Tech Pools, which has not been repaid. *See Exhibit 1(E and F).*

11. On or about March 9, 2009, the Receiver filed a lawsuit on behalf of Gaston Premier Homes, Ltd., against Gaston, individually, for the purpose of establishing that Gaston Premier Homes, Ltd., has an interest in the Lake House, among other assets, and that Gaston is the alter-ego of Gaston Premier Homes, Ltd. The Receiver's lawsuit is styled as Cause No. D-1-GN-09-000778; *Gaston Premier Homes, Ltd., d/b/a Gaston Premier Homes and Guillermo Ochoa-Cronfel v. William Gaston,* in the 53rd Judicial District Court of Travis County, Texas. The Receiver also filed a *Notice of Lis Pendens* on the Lake House. *See Exhibit 1(J).* This matter is still pending.

12. On or about May 1, 2009, the Receiver noticed Gaston for deposition on June 10, 2009, but Gaston quashed said motion. On or about May 26, 2009, Receiver again noticed Gaston for deposition on June 17, 2009. Again, Gaston caused said notice to be quashed. *See Exhibit 1.* To date, Gaston has yet to produce the documentation required under the State Court's Order for Turnover Relief, and Gaston has failed and refused to give any testimony despite the Receiver's attempts to notice Gaston's deposition.

13. Prior to this bankruptcy filing, Receiver notified Gaston's attorney that the Receiver would not consent to said filing. The Receiver was subsequently notified that if Johnson did not agree to accept Gaston's inadequate offer of settlement, then Gaston, on behalf of Gaston Premier Homes, Ltd., would file for bankruptcy. *See Exhibit 1(K).*

## BANKRUPTCY CASE

14. Gaston filed this bankruptcy in bad faith, on behalf of Gaston Premier Homes Ltd., on or about July 7, 2009, without the permission of the Receiver, to stay the pending Order for Turnover Relief, and to prevent the State court from finding Gaston individually liable for the debt owed to Johnson.

15. The bankruptcy filing clearly reflects Gaston's bad faith motive. Despite allowing the sole managing member, Gaston GP1, LLC., to forfeit its charter in February 2008, and despite Gaston's claims that Gaston Premier Homes, Ltd., has not operated or produced income in 2009, Gaston caused the reinstatement of Gaston GP1, LLC., on March 13, 2009, for the sole purpose of filing for bankruptcy in hopes of thwarting the Receiver's claims against him individually, just three (3) days after the Receiver filed the above-described lawsuit against Gaston.[1]

## DISMISSAL FOR LACK OF AUTHORITY TO FILE

---

[1] Gaston reinstated the sole general partner GASTON GP1, LLC., for Gaston Premier Homes, Ltd., on March 13, 2009, after it had forfeited its existence a year earlier pursuant to 171.309 of the Texas Tax Code, and after telling the Receiver that Gaston Premier Homes, Ltd., ceased operations at the beginning of 2008. See Page 6 of Exhibits 1B and 2.

16. As set forth above, on September 9, 2008, all assets, accounts receivable, securities and choses of actions of Gaston Premier Homes, Ltd., were placed in the hands of the Receiver, pursuant to the Order for Turnover Relief issued in D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd;* in the 250th Judicial District Court of Travis County, Texas. Accordingly, Gaston had no authority to file the Chapter 7 bankruptcy petition on behalf of Gaston Premier Homes, Ltd.

17. Where a petition is filed without the requisite authority to do so, the Court must dismiss the petition. See *Price v. Gurney*, 324 U.S. 100, 106-07, 65 S.Ct. 513, 516-517, 89 L.Ed 776 (1945). In *Chitex Communication, Inc. v. Kramer, et. al.*, 168 B.R. 587, 590 (S.D. Tex. 1994), the court observed that a "president of an insolvent corporation had no authority to affect the corporation's property interests once a state court had placed it into receivership." Instead, the state court receiver "stands in the shoes of management." *Id.* (citing *SEC v. Spence & Green Chemical Co.*, 612 F.2d 896, 903 (5th Cir. 1980)). Accordingly, the *Chitex* court concluded that only the receiver had the authority to file and maintain a bankruptcy proceeding.

18. Here, the Receiver made it clear that he objected to Gaston filing this bankruptcy petition on behalf of Gaston Premier Homes, Ltd. *See Exhibit 1.*

## DISMISSAL PURSUANT TO 11 U.S.C. § 305

19. Section 305 of the Bankruptcy Code provides in relevant part: The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if --- (1) the interests of creditors and the debtor would be better served by such dismissal or suspension. 11 U.S.C. § 305(a).

20. Courts may "consider a wide variety of factors relevant to the facts of the particular case in determining whether to abstain under Section 305." *In re Spade,* 258 B.R. 221, 231 (Bankr. D. Col. 2001). Relevant factors include:

    a. The motivation of the parties seeking bankruptcy jurisdiction. *See In re First Financial Enterprises, Inc.,* 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989).

  b. Availability of another forum to protect the interests, or already pending proceedings in another forum. *See First Financial Enterprises*, 99 B.R. at 754; *Int'l Zinc Coatings*, 355 B.R. 76, 82 (Bankr.N.D. Ill 2006); *Spade*, 258 B.R. at 231.

  c. Economy and efficiency of administration. *See Int'l Zinc Coatings*, 355 B.R. at *82; Spade*, 258 B.R. at 231.

  d. Prejudice to the parties. *See Int'l Zinc Coatings*, 355 B.R. at 82; *Spade*, 258 B.R. at 231.

  e. The presence of unsettled issues of non-bankruptcy law. *See Int'l Zinc Coatings*, 355 B.R. at 82.

  f. The purpose of the bankruptcy. *See Int'l Zinc Coatings*, 355 B.R. at 82.

21. Abstention is appropriate where petitioner uses a [bankruptcy] case purely as a litigation strategy." *In re First Financial Enterprises, Inc.*, 99 B.R.751,754 (Bankr. W.D. Tex. 1989).

22. "In considering dismissal under Section 305, it is appropriate to consider the motivation of the parties in seeking the jurisdiction of the bankruptcy court." *Spade*, 258 B.R. at 231. "[T]he motives of the parties can significantly influence the Court's evaluation of other factors and contribute to the Court's decision to dismiss under Section 305." *Id.* at 232.

23. In *Spade*, the court found that that the case was "little more than a two-party collections dispute" between the petitioning creditor and debtor, and that "[t]here is no need for a federal court to resolve this two-party dispute that implicates purely state law issues." *Id.* at 234, 235.

24. Furthermore, the court found that "[b]ringing this case into the bankruptcy court would only add an additional layer of expense to the resolution of this two-party case." *Id.* at 236. Finally, the court found that other creditors would be prejudiced by continuation of the bankruptcy case, as they would incur additional expenses. *Id.* at 236-37.

25. In *re ELRS Loss Mitigation, LLC*, 325 B.R. 604 (Bankr. N.D. Okla. 2005), the court dismissed a Chapter 7 petition under Section 303 because the debtor was generally paying its debts as they came due, and also held that if the case were not dismissed under Section 303, it

would be dismissed under Section 305. The bankruptcy case was a two party dispute, and other creditors had not joined the petitioning creditor to support the bankruptcy petition. *Id.* at 634.

26. Finally, neither creditors nor debtor would be prejudiced by being forced to litigate the dispute in another forum. *Id.* at 635.

27. Here, the motivation for this bankruptcy petition is bad faith. Gaston seeks to delay a judicial determination that he is individually liability for a judgment taken against Gaston Premier Homes, Ltd., and attempting to defeat the State of Texas's regulatory scheme of receivership. Gaston has chosen to use the bankruptcy court as a litigation strategy to deprive Johnson and the Receiver of collecting upon the assets of Gaston Premier Homes, Ltd., currently held by the Receiver.

28. As set forth above, this is essentially a two party collection dispute and there is no evidence that Gaston Premier Homes, Ltd. owes. Gaston any money and/or has any other substantial debts. Petitioner lists only Champion Drywall and First Insurance Funding as potential creditors not involved in the underlying lawsuit and said claims against Petitioner amount to a mere $1,662.24 of the total debt owed to Johnson of $121,876.55.

## DISMISS THIS CASE AS A BAD FAITH FILING UNDER 11 U.S.C. § 707

29. Section 707(a) of the Bankruptcy Code provides in relevant part: The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--- unreasonable delay by the debtor that is prejudicial to creditors; nonpayment of any fees or charges required under chapter 123 of title 28; and failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee. 11 U.S.C. § 707(a).

30. Any party in interest, including a non-petitioning creditor, may make a motion to dismiss under Section 707. *See In re Jr. Food Mart of Arkansas*, 234 B.R. 420, 421-22 (Bankr. E.D. Ark. *1999); In re MacFarlane Webster Assocs.*, 121 B.R. 694, 696-97 (Bankr. S.D.N.Y. 1990).

31. In *In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 168 (Bankr. S.D. Tex. 1989), the court held that there is cause to dismiss when a petition is filed in bad faith. Among the factors that evidenced bad faith was that "the dispute is essentially a two-party dispute." *Id.* at 169. "[T]he bankruptcy filing ha[d] been used as a litigation tactic in what is essentially a two-party dispute." "Use of the bankruptcy process as a litigation tactic is abuse of the reorganization process constituting a lack of good faith in filing which warrants dismissal." *Id.* at 171.

32. Here, as explained above, the Receiver's affidavit sets forth facts that demonstrate Gaston filed this case in bad faith only after the Receiver filed a lawsuit against Gaston, individually, and a *Notice of Lis Pendens* on Gaston's non-exempt, non-homestead Lake House to discern the interests of Gaston Premier Homes, Ltd.

33. Further, it is clear that Gaston reinstated Gaston GP1, LLC., after it had forfeited its charter in February 2008, for the sole purpose of filing this bankruptcy petition in an attempt to thwart the Receiver's claims against him individually.

## DISMISS THIS CASE AS A BAD FAITH FILING UNDER 11 U.S.C. § 105

34. To the extent that this Court has authority to prevent an abuse of process, pursuant to 11 U.S.C. § 105, created by the filing of the bankruptcy petition of Gaston Premier Homes, Ltd., Movants request this Court to dismiss this case with prejudice to Gaston Premier Homes, Ltd. from refiling same.

## CONCLUSION

35. Based on the foregoing, and the affidavit of Receiver, Guillermo Ochoa-Cronfel, herein attached, Movants respectfully request that the Court dismiss this bankruptcy case with prejudice.

WHEREFORE, Movants respectfully request that the Court enter an order (a) granting Movants' Joint Motion to Dismiss, (b) dismissing this case and with prejudice to Gaston Premier Homes, Ltd., and its' respective successors and assigns, or any of them, filing any bankruptcy

petition against the Debtor, and (c) granting Movants such other and further relief, at law or in equity, to which they may show themselves justly entitled.

                      Respectfully submitted,

By: _____
       Guillermo Ochoa-Cronfel
       Texas State Bar No. 15175600

THE CRONFEL FIRM
2700 Bee Caves Rd., Ste. 103
Austin, Texas 78746
(512) 347-9600 Telephone
(512) 347-9911 Facsimile
*gjocronfel@austin.rr.com*

**RECEIVER IN CAUSE NO. D-1-GN-08-001456; RICHARD JOHNSON V. GASTON PREMIER HOMES, LTD; IN THE 250TH JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS**


By: _____
       Seth E. Meisel
       Texas State Bar No. 24037089

K&L GATES LLP
111 Congress Avenue, Suite 900
Austin, Texas 78701
(512) 482-6800 Telephone
(512) 482-6859 Facsimile
*seth.meisel@klgates.com*

**ATTORNEYS FOR PLAINTIFF RICHARD JOHNSON**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been served on August 6, 2009 to the parties as set forth below.

| | |
|---|---|
| Michael E. Miller<br>807 Brazos #504<br>Austin, Texas 78701<br>Telephone number: (512) 472-0511 | \_\_\_\_ via Certified Mail, RRR<br>\_x\_ via U.S. Mail (First Class)<br>\_\_\_\_ via Federal Express<br>\_\_\_\_ via Facsimile<br>\_\_\_\_ via E-mail<br>\_\_\_\_ via Messenger |
| Bankruptcy Trustee<br>Appointed by U.S. Trustee<br>Randolph N Osherow<br>342 W. Woodlawn, Suite 100<br>San Antonio, Texas 78212<br>Telephone number: (210) 738-3001 | \_\_\_\_ via Certified Mail, RRR<br>\_x\_ via U.S. Mail (First Class)<br>\_\_\_\_ via Federal Express<br>\_\_\_\_ via Facsimile<br>\_\_\_\_ via E-mail<br>\_\_\_\_ via Messenger |
| United States Trustee<br>903 San Jacinto Blvd., Room 230<br>Austin, Texas 78701 | \_\_\_\_ via Certified Mail, RRR<br>\_\_\_\_ via U.S. Mail (First Class)<br>\_\_\_\_ via Federal Express<br>\_\_\_\_ via Facsimile<br>\_\_\_\_ via E-mail<br>\_\_\_\_ via Messenger<br>\_x\_ via Hand Delivery |

_____
Guillermo Ochoa-Cronfel

Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE: § <br> § <br> GASTON PREMIER HOMES, LTD. § <br> f/k/a GASTON & ROMELLPREMIER § <br> HOMES LTD. § <br> § <br> DEBTOR § <br> § | CASE NO. 09-11903CG <br> Chapter 7 |

### AFFIDAVIT OF RECEIVER GUILLERMO OCHOA-CRONFEL IN SUPPORT OF JOINT MOTION TO DISMISS THIS BANKRUPTCY CASE

On this day, personally appeared GUILLERMO OCHOA CRONFEL who being duly sworn on his oath, deposed and said:

1. "My name is Guillermo Ochoa-Cronfel and I am over the age of twenty-one (21) years of age, of sound mind, capable of making this affidavit, and have never been convicted of a felony or a crime of moral turpitude. I have personal knowledge of the facts stated in this affidavit, and they are true and correct.

2. I am an attorney licensed to practice law in the State of Texas. I have been licensed since 1988, and have never been reprimanded or otherwise sanctioned by the State Bar or the courts of any Jurisdiction.

3. On or about September 9, 2008, I was appointed as Receiver, by the Honorable Judge Orlinda Naranjo, in Cause No. D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd.*; in the 250th Judicial District Court of Travis County, Texas. The purpose of this appointment is to liquidate a judgment obtained by the Judgment Creditor, Richard Johnson, in the amount of $40,112.50, plus attorney fees and costs against Gaston Premier Homes, Ltd. The Judgment was entered against Gaston Premier Homes, Ltd., on or about July 29, 2008. *See Exhibit A.*

4. In the course of my investigation, I had several conversations with William Gaston who resides at 17220 Rocky Ridge, Rd., Austin, Texas 78734, the sole managing partner of Gaston GP1 LLC (which solely manages Gaston Premier Homes, Ltd.). During our conversation on or about October 24, 2008, we discussed the obligation he had to produce documents for Gaston Premier Homes, Ltd., pursuant to the Order for Turnover Relief entered in the above-mentioned matter, and the assets of Gaston Premier Homes, Ltd. At that time, Mr. Gaston acknowledged that he had hired Barry Custom Homes to

help him work on his lake house property located at 312 Camino Arbolago, Lakeway, Texas. *See Exhibit B (Transcript pages 2-10).*

5. Shortly thereafter, I discovered that Mr. Gaston has a number of other companies and/or d/b/as listed to his personal residence of 17220 Rocky Ridge Rd., Austin, Texas 78734, with the Texas Secretary of State's Office and/or the Travis County Clerk's Office. Those entities include Bella Vista Pools & Spas, Gaston GP1, LLC., and Wet-Tech Pools. *See Exhibit C1.*

6. Upon learning that Mr. Gaston was not going to comply with the Order for Turnover Relief, I caused to be sent a request to Compass Bank for all financial account information it possessed for Gaston Premier Homes, Ltd. *See Exhibit C2.* The documents attached herein as Exhibits B through K are true and correct copies of those documents obtained from Compass Bank and/or obtained in the course of investigating the facts and allegations in this matter.

7. The bank statements, from Compass Bank (herein attached as Exhibit D), show that from January, 2007 up until an arbitrator issued an award in favor of Richard Johnson against Gaston Premier Homes, Ltd., on or about March 31, 2008, Gaston Premier Homes, Ltd. had deposits totaling $1,300,343.62 in its Primary Checking Account No: 0024067246 at Compass Bank. After the Final Judgment Confirming the Arbitration Award for Mr. Johnson was entered by the 250th Judicial District Court in Travis County, Texas, on or about July 28, 2008, only $400.81 was on deposit in said account.

8. Upon close inspection of the records, the bank statements (*Exhibit D*) show that:

    a. $144,105.04 was transferred from the Gaston Premier Homes, Ltd., account to another unknown Compass Bank Account 0025883675;

    b. $32,000.00 was transferred from the Gaston Premier Homes, Ltd., account to another unknown Compass Bank Account 0077787305; and

    c. over $85,753.24.67 went to pay balances on Mr. Gaston's American Express account during this same period.

9. Further, documents obtained from Compass Bank and/or under the authority of the Order for Turnover Relief, also show that:

    a. Mr. Gaston used over $93,989.75 of Gaston Premier Homes, Ltd., money to design and construct his lake house property located at 312 Camino Arbolago, Lakeway, Texas, and the company is still paying for work on said property. *See Exhibit E.*

2

b. Mr. Gaston caused Gaston Premier Homes, Ltd., to loan his other company Wet-Tech Pools $24,550.00 from January 2007 until the date of Judgment and paid for Wet-Tech expenses (including insurance and salary). *See Exhibit F.*

c. Mr. Gaston wrote himself checks from the Gaston Premier Homes, Ltd., checking account from the Compass Bank Account in the amount of $12,550.00., apart from his transfers to unknown accounts as described above in paragraph 7. *See Exhibit G.*

10. The documents show that Gaston Premier Homes, Ltd., was paying for Mr. Gaston's personal expenses (i.e. insurance on his Lexus/ 2005 Ford, the purchase of automobiles not listed in the bankruptcy schedules, purchase of other properties, cable, etc.) and the expenses of Wet-Tech before and after the date of judgment. *See Exhibit H.*

11. Documents obtained pursuant to the Order for Turnover Relief, also show that Mr. Gaston, on behalf of Gaston Premier Homes, Ltd., caused new applications for credit to be filed under the d/b/a name of Wet-Tech. *See Exhibit I.*

12. There are no records of any loans made to Gaston Premier Homes, Ltd., by Mr. Gaston, and/or any evidence Wet-Tech has paid back Gaston Premier Homes, Ltd., for the amounts loaned, as set forth in paragraph 8. Further, the Judgment Debtor has not produced any documents, pursuant to the Order for Turnover Relief, to refute such.

13. Based on the information described above, I filed a lawsuit on behalf of Gaston Premier Homes, Ltd., against William Gaston, individually, setting forth that Gaston Premier Homes Ltd., had an interest in the lake house located at 312 Camino Arbolago, Lakeway, Texas, and that William Gaston is the alter-ego of the Judgment Debtor. The case is styled: *Gaston Premier Homes, Ltd., d/b/a Gaston Premier Homes and Guillermo Ochoa-Cronfel v. William Gaston,* in the 53rd Judicial District Court of Travis County, Texas, filed on March 9, 2009.

14. A *Lis Pendens* was also filed, on or about March 10, 2009, against the property located at 312 Camino Arbolago, Lakeway, Texas, on behalf of Gaston Premier Homes, Ltd. The property located at 312 Camino Arbolago, Austin, Texas, is currently for sale and being marketed, by Mr. Gaston, for the amount of $2,300,000.00. *See Exhibit J.*

15. Upon noticing Mr. Gaston for his deposition on June 17, 2009, for the second time, Mr. Gaston's attorney, Clint Rosenthal, filed a motion to quash. To date, Mr. Gaston has failed to produce all requested documentation, pursuant to the Court's September 9, 2008, Order for Turnover Relief, and/or give his testimony. *See Exhibit K.*

3

16. On or about June 1, 2009, I received an e-mail from Mr. Gaston's attorney, Clint Rosenthal, stating that if the Richard Johnson does not accept Mr. Gaston's offer to settle, he would file for bankruptcy. *See Exhibit K.* I subsequently conveyed to Mr. Gaston's attorney my issues with his proposed bankruptcy filing and that I was against them doing so.

17. Based on the evidence obtained, as set forth above, I believe Mr. Gaston's filing of bankruptcy, on behalf of Gaston Premier Homes, Ltd., was done in bad faith.

Further Affiant sayeth not.

Guillermo Ochoa-Cronfel

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, by Guillermo Ochoa-Cronfel August 6, 2009, to certify which witness my hand and official seal of office.

Notary Public for the State of Texas

MICHAEL G. GRAHAM
Notary Public, State of Texas
My Commission Expires
March 09, 2011

4