

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 18, 2009**

_____
                      **CRAIG A. GARGOTTA
 UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

In re GASTON PREMIER HOMES, LTD. §     Case No. 09-11903-cag
                                              §
               Debtor.                     §     Chapter 7

**MEMORANDUM OPINION AND ORDER GRANTING THE JOINT MOTION OF
CREDITOR RICHARD JOHNSON AND RECEIVER GUILLERMO OCHOA-CRONFEL
TO DISMISS THIS BANKRUPTCY CASE**

Came on to be considered on October 7 and 28, 2009, the Joint Motion of Creditor Richard Johnson and Receiver Guillermo Ochoa-Cronfel to Dismiss This Bankruptcy Case and the Debtor's and Will Gaston's Objections and Responses thereto. After hearing, the Court took the matter under advisement. Based upon the evidence and pleading of counsel, the Court GRANTS the Joint Motion. As such, it is ORDERED that Debtor's Chapter 7 case is DISMISSED.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District and is determined to be a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) (matters concerning administration of the estate). The Court is authorized to enter final judgment in this proceeding under 28 U.S.C. §157(b) and §1334.

1

The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014. In reaching its determinations, the Court considered the demeanor and credibility of all witnesses who testified, including all admitted exhibits. The Court also considered the oral arguments of counsel and trial briefs.

Creditor Richard Johnson and Receiver Guillermo Ochoa-Cronfel raise three (3) grounds for dismissing Debtor's Chapter 7 case. First, they allege that the Chapter 7 petition was filed without the requisite authority to file. Second, Johnson and Receiver contend that this case should be dismissed under 11 U.S.C. §305. Third, the parties allege that the case should be dismissed under 11 U.S.C. §707. The Debtor and the Debtor's Limited Partner, Will Gaston, oppose the motion.

Accordingly, the court determines that the following evidence adduced at trial as determinative of the issues in this case.

## FINDINGS OF FACT

1. Petitioner, Gaston Premier Homes, Ltd., was first registered as Gaston & Romell Premier Homes, Ltd., in April 2000. In June of 2004, Will Gaston caused to be filed a Certificate of Amendment changing the name of the company to Gaston Premier Homes, Ltd., and designating the sole general partner as Gaston GP1, L.L.C., of which Gaston is the sole managing member. The company has operated out of Gaston's personal residence, located at 17220 Rocky Ridge Road, Austin, Texas, ever since. In 2007, Gaston Premier Homes, Ltd. had deposits in its Compass Bank Checking Account in the total amount of $1,169,732.44.

2. On or about April 26, 2005, Richard Johnson and Gaston Premier Homes, Ltd. entered into a residential construction contract under which Gaston Premier Homes, Ltd.

2

contracted to construct a single-family residence for Johnson at 315 Camino Arbolago, Austin, Texas 78734 (the "Lake House"). Both during and after construction, Johnson alerted Gaston of numerous construction defects in connection with the Lake House, yet Gaston failed to remedy those defects.

3. On November 2, 2007, Johnson filed with the American Arbitration Association his Demand for Arbitration, and on March 31, 2008, the arbitrator issued an award requiring Gaston Premier Homes, Ltd. to pay Johnson the sum of $40,112.50. When Gaston Premier Homes, Ltd. failed and refused to pay the award, Johnson filed a lawsuit to confirm the arbitration award. That suit, styled Cause No. D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd.*; in the 250th Judicial District Court of Travis County, Texas, was filed on April 28, 2008.

4. On July 28, 2008, the state court entered a final judgment against Gaston Premier Homes, Ltd., awarding Johnson damages, attorney's fees, court costs, and interest totaling $43,001.60. Post-judgment interest continues to accrue at the rate of 5% to be compounded annually. To date, that judgment remains unsatisfied.

5. On or about September 9, 2008, Johnson applied for and obtained an Order for Turnover Relief appointing Guillermo Ochoa-Cronfel as Receiver to assist in collecting the judgment obtained in the underlying matter.

6. During the course of his duties, the Receiver obtained taped recordings of conversations with Gaston, bank documents, and invoices that allegedly show that Gaston used more than $93,989.75 from Gaston Premier Homes, Ltd.'s business checking account at Compass Bank to design and construct Gaston's Lake House. Those same documents purport to show that Gaston caused more than $24,550.00 from Gaston Premier Homes, Ltd.'s business

checking account, at Compass Bank, to be loaned to Gaston's other d/b/a Wet-Tech Pools, which has not been repaid.

7. On or about March 9, 2009, the Receiver filed a lawsuit on behalf of Gaston Premier Homes, Ltd. against Gaston, individually, for the purpose of establishing that Gaston Premier Homes, Ltd. has an interest in the Lake House, among other assets, and that Gaston is the alter-ego of Gaston Premier Homes, Ltd. The Receiver's lawsuit is styled as Cause No. D-1-GN-09-000778; *Gaston Premier Homes, Ltd., d/b/a Gaston Premier Homes and Guillermo Ochoa-Cronfel v. William Gaston*, in the 53rd Judicial District Court of Travis County, Texas. The Receiver also filed a *Notice of Lis Pendens* on the Lake House. This matter is still pending.

8. Prior to this bankruptcy filing, Receiver notified Gaston's attorney that the Receiver would not consent to said filing. The Receiver was subsequently notified that if Johnson did not agree to accept Gaston's offer of settlement, then Gaston, on behalf of Gaston Premier Homes, Ltd., would file for bankruptcy.

9. Gaston filed this bankruptcy on behalf of Gaston Premier Homes Ltd. on or about July 7, 2009, without the permission of the Receiver, to stay the pending Order for Turnover Relief, and to prevent the State court from finding Gaston individually liable for the debt owed to Johnson.

10. The Court notes that the sole managing member, Gaston GP1, L.L.C., forfeited its charter in February 2008, and that Gaston caused the reinstatement of Gaston GP1, L.L.C. on March 13, 2009, just three (3) days after the Receiver filed the above-described lawsuit against Gaston.[1]

---

[1] Gaston reinstated the sole general partner GASTON GP1, L.L.C., for Gaston Premier Homes, Ltd., on March 13, 2009, after it had forfeited its existence a year earlier pursuant to 171.309 of the Texas Tax Code, and after telling the Receiver that Gaston Premier Homes, Ltd. ceased operations at the beginning of 2008. See Page 6 of Exhibits 1B and 2 to the Joint Motion.

11. As set forth above, on September 9, 2008, all assets, accounts receivable, securities and choses of actions of Gaston Premier Homes, Ltd. were placed in the hands of the Receiver, pursuant to the Order for Turnover Relief issued in D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd.*; in the 250th Judicial District Court of Travis County, Texas.

12. The Debtor's petition, schedules, statement of financial affairs, and creditor's matrix state the following:

    (a) Will Gaston, as the sole member of Gaston GP1, L.L.C., the sole general partner, filed Debtor's Chapter 7 case;

    (b) The Debtor owns no real property;

    (c) The Debtor has a contract claim against Hardwood Flooring for $124,000 with an "unknown" value;

    (d) The Debtor has three other assets – a 2006 Ford F150 and 2007 Nissan Frontier (which are both leased to Wet-Tech), and a $3,000 check currently held by the Receiver;

    (e) The Debtor has two secured creditors (two lienholders on the trucks) and five unsecured creditors which include two other small debts and three remaining debts to Will Gaston, Richard Johnson and the Receiver;

    (f) The Debtor had no income per its SOFA; and

    (g) The Debtor's current partners are Gaston GP1, L.L.C (2%-general partner) and Will Gaston (98%-limited partner).

13. In addition to the Debtor's bankruptcy filings, the following exhibits were admitted into evidence:

| | Receiver's Exhibits |
|---|---|
| 1 | §31.002 Tex. Civ. Proc. Rem. Code<br>Turnover statute for judgment creditor <u>only</u><br>Order for turnover relief |
| 2 | Assumed name<br>Wet-Tech Pools →Will Gaston |
| 3 | 2/8/09 Forfeiture of Gaston GP1, L.L.C |
| 4 | Certificate of Account Status<br>9/15/09 – not in good standing<br>Failure to pay franchise taxes Gaston GP1, L.L.C<br><br>9/15/09 Gaston Premier Homes, Ltd. – failure to pay franchise taxes |
| 5 | Compass Bank account statements |
| 6 | Copies of miscellaneous checks |
| 7 | State court petition |
| 8 | Receiver notice of lis pendens on 312 Camino Arbolago – Lake House |
| 9 | Gaston Premier Homes profit/loss statement Dec. 2007<br>Negative net income of $94,000 |
| 10 | Gaston Premier Homes profit/loss statement Jan.<br>10/2/08 negative net income of $53,000<br>Aging of account receivables – 10/2/08<br>Balance sheet total loss and expenses $291,000 |
| 11 | Lighting bill – 11/28/08 – shows Gaston Premier doing business |
| 12 | Will Gaston's responses to receiver production requests – shows little assets for debtor |
| 13 | 9/1/09 bill to Gaston Premier Home for flooring |
| **Debtor's/Will Gaston's Exhibits** | |
| 1 | GPH (Gaston Premier Homes) → BCH (Barry Custom Homes) regarding loans and repayments – no backup |
| 2 | GPH → WRG (Will Gaston) – GPH payroll payments to Gaston |
| 3 | WRG → BCH Gaston payments to BCH for 312 Arbolago |
| 4 | WRG MM (money market) → GPH – Gaston loans to GPH and repayment of same |

| 5 | GPH → WT (Wet-Tech) loans |
|---|---|
| 6 | BCH checks to GPH for payment of invoices on Arbolago house → Gaston signed these on behalf of BCH |
| 7 | Form 1065 GPH 2007 unsigned |
| 8 | Form 1065 GPH 2008 unsigned |
| 9 | 10/29/09 notice of reinstatement from Texas comptroller |

14. Three persons testified at the hearing: the Receiver, Guillermo Ochoa-Cronfel, Will Gaston, and the Debtor's bookkeeper, Jennifer Wynn.

<u>Guillermo Ochoa-Cronfel</u> as Receiver testified that he is a court-appointed receiver under the Texas Turnover statute to collect on the Richard Johnson judgment. Cronfel stated he believes that the Debtor also did business as Wet-Tech Pools. He acknowledged that he has received some documents from Gaston, but he does not have adequate financial records or documents as to the transfers between BCH-Will Gaston, and Will Gaston-GPH. The underlying checks and basis of loans are missing. He testified that at the time of filing, the Debtor's general partner was not in good standing. Cronfel acknowledged that he believed that the Lake House built by Gaston was the primary asset in which he could satisfy the Johnson judgment.[2]

<u>William Gaston</u> testified that 17220 Rocky Ridge Road is not his homestead. He stated that he did not provide the Receiver with any documents evidencing his authority to file bankruptcy for the Debtor. Gaston did not know if the Debtor's charter had been forfeited but stated that it had been reinstated. Gaston stated that Debtor is not doing business, had no employees, and that Debtor's only assets were two vehicles that may have no equity. Gaston also indicated that the Debtor ceased doing business in the first quarter of 2008 but there appears

---

[2] Gaston testified that he placed the Lake House on the market for roughly $1.9-$2.0 million.

to be some invoices with the Debtor's name as late as the third quarter of 2009. Further, Gaston did not adequately explain the commingling of money, and payments between BCH, the Debtor, and himself. His answers were at best vague and non-responsive. Gaston agreed that he produced no documentation evidencing the loans between BCH and himself.

Gaston stated that the Lake House is now claimed as his homestead. Gaston further explained that he personally took out the construction loan to build the Lake House. He testified that he did not "touch" the construction loan to BCH. Further, Gaston maintained that he floated loans to BCH until draws from a construction loan could be used.

On direct examination, Gaston explained that Exhibit G-1 demonstrated that GPH paid BCH so that contractors could be paid because BCH did not have any money. Also, Gaston gave GPH the money through loans. In addition, Exhibit G-2 shows GPH paying Gaston for payroll when GPH had funds to do so. Gaston also testified that GPH paid money back to Gaston to reimburse Gaston for loans made to GPH. Gaston stated that GPH owes him over $148,000.00 (Exhibit G-4). Gaston stated that GPH loaned money to Wet-Tech and that Wet-Tech is out of business. Gaston stated that he could write checks for BCH and that the checks he wrote were to pay the construction costs of the Lake House.

Gaston does not know if he signed the partnership tax returns or if they were filed. Further, Gaston agreed that he did not provide the backup documentation for G1-8. Gaston agreed that the documents that he gave the Receiver in 2008 showed that GPH had money and assets in 2008, but the documents submitted for this trial showed none.

Jennifer Wynn served as the Debtor's bookkeeper. She does know if Debtor's tax returns were filed. She testified that she provided some bank statements to the Receiver.

8

**CONCLUSIONS OF LAW**

1. The Receiver and Creditor Johnson argue on at least three grounds that this case should be dismissed. The Court will individually rule on each basis for dismissal.

2. First, the Movants contend that this case may be dismissed because the Debtor did not have the requisite authority to file bankruptcy. Specifically, the Movants contend that on September 9, 2008, all assets, accounts receivable, securities and choses of actions of Gaston Premier Homes, Ltd. were placed in the hands of the Receiver, pursuant to the Order for Turnover Relief issued in D-1-GN-08-001456; *Richard Johnson v. Gaston Premier Homes, Ltd.*; in the 250th Judicial District Court of Travis County, Texas. Accordingly, Gaston had no authority to file the Chapter 7 bankruptcy petition on behalf of Gaston Premier Homes, Ltd. Movants argue that where a petition is filed without the requisite authority to do so, the court must dismiss the petition. *See Price v. Gurney*, 324 U.S. 100, 106-07 (1945). In *Chitex Communication, Inc. v. Kramer, et al.*, 168 B.R. 587, 590 (S.D. Tex. 1994), the court observed that a "president of an insolvent corporation had no authority to affect the corporation's property interests once a state court had placed it into receivership." Instead, the state court receiver "stands in the shoes of management." *Id.* (citing *SEC v. Spence & Green Chemical Co.*, 612 F.2d 896, 903 (5th Cir. 1980)). Accordingly, the *Chitex* court concluded that only the receiver had the authority to file and maintain a bankruptcy proceeding. Here, the Receiver made it clear that he objected to Gaston filing this bankruptcy petition on behalf of Gaston Premier Homes. Ltd. *See Exhibit 1*.

3. The Debtor and Will Gaston disputed Movants' contention, arguing that the appointment of the Receiver does not deprive the corporate directors of the power to file a bankruptcy petition. *See In re Milestone Educ. Institute, Inc.*, 167 B.R. 716, 720 (Bankr. D.

Mass. 1994), citing *In re Prudence*, 79 F.2d 77, 80 (2nd Cir. 1935). "The authority to file a bankruptcy petition is in the board of directors." *In re S&S Liquor Mart, Inc.*, 52 B.R. 226, 228 (Bankr. D. R.I. 1985). In fact,

> "it is fundamental that a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy courts [citations omitted] and it has been held that an order in a state court receivership *specifically restraining* the debtor corporation, its shareholders, officers, and directors from instituting federal reorganization proceedings is an unconstitutional deprivation of the right to bankruptcy relief." (Emphasis added.)

*In re S&S Liquor Mart, Inc.*, 52 B.R. at 227. A corporation's directors could pass a resolution to file bankruptcy despite a state court order, in receivership proceedings, not to do so. *In re Kreisers, Inc.*, 112 B.R. 996 (Bankr. D. S.D. 1990). A company "may not be precluded by state law from availing itself of federal bankruptcy law . . . [T]he receiver's exclusive title to the assets did not preclude the filing of the petition." *Cash Currency Exchange, Inc. v. Shine*, 762 F.2d 542, 552 (7th Cir. 1985). "A state court receivership cannot operate to deny a corporate debtor access to this nation's bankruptcy courts." *Matter of Greater Atlanta Apartment Hunter's Guide*, 40 B.R. 29, 31 (Bankr. N.D. Ga. 1984).

4. Movants cite to this Court only one case to support their assertion that, when a state court has appointed a receiver, only that receiver has authority to file a bankruptcy petition for a company: *Chitex Communication, Inc. v. Cathleen Kramer, et al.*, 168 B.R. 587 (S.D. Tex. 1994). In *Chitex*, the receiver was given not only control of corporate assets, but complete ownership and management control of the company.

5. The Receiver in the instant case was not appointed under the Receivership Chapter (Ch. 64) of the Texas Civil Practice & Remedies Code. He was appointed under the Texas Turnover Statute, in an order itself styled "Order for Turnover Relief," to take possession of the leviable property of the Debtor in order to satisfy the judgment of a particular creditor: the

10

other Movant, Richard Johnson. Thus, the Receiver is acting to collect available property for one purpose: to pay one creditor, Richard Johnson. Movants themselves admit this in paragraph 9 of their Motion.

6. The Debtor has the better argument. To begin with, the Receiver in this case has been appointed for the benefit of Richard Johnson, not the creditors. There has been no case law provided to the Court that suggests that a receiver in this context abrogated the Debtor's ability to file bankruptcy. Second, Will Gaston is the sole partner of the general practice and the limited partner. Effectively, Will Gaston is the Debtor and the fact that GP1 may have forfeited its charter does not mean that the Debtor may not file bankruptcy. The better reasoned cases hold that the ability to file bankruptcy is a function of federal, not state law. The Receiver in this instance cannot preclude a remedy under federal law – there is nothing in the state turnover statute that allows for it.

7. Second, the Movants contend that this case should be dismissed under 11 U.S.C. §305. Specifically, section 305 states in relevant part: "The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. §305(a).

8. Courts may "consider a wide variety of factors relevant to the facts of the particular case in determining whether to abstain under Section 305." *In re Spade*, 258 B.R. 221, 231 (Bankr. D. Col. 2001). Relevant factors include:

> (a) The motivation of the parties seeking bankruptcy jurisdiction. *See In re First Financial Enterprises, Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989).

    (b)    Availability of another forum to protect the interests, or already pending proceedings in another forum. *See First Financial Enterprises*, 99 B.R. at 754; *Int'l Zinc Coatings,* 355 B.R. 76, 82 (Bankr. N.D. Ill 2006); *Spade*, 258 B.R. at 231.

    (c)    Economy and efficiency of administration. *See Int'l Zinc Coatings*, 355 B.R. at 82; *Spade*, 258 B.R. at 231.

    (d)    Prejudice to the parties. *See Int'l Zinc Coatings*, 355 B.R. at 82; *Spade*, 258 B.R. at 231.

    (e)    The presence of unsettled issues of non-bankruptcy law. *See Int'l Zinc Coatings*, 355 B.R. at 82.

    (f)    The purpose of the bankruptcy. *See Int'l Zinc Coatings*, 355 B.R. at 82.

9.    Abstention is appropriate where petitioner uses a [bankruptcy] case purely as a litigation strategy. *First Financial Enterprises, Inc.*, 99 B.R. at 754. Further, "[i]n considering dismissal under Section 305, it is appropriate to consider the motivation of the parties in seeking the jurisdiction of the bankruptcy court." *Spade*, 258 B.R. at 231. "[T]he motives of the parties can significantly influence the Court's evaluation of other factors and contribute to the Court's decision to dismiss under Section 305." *Id*. at 232.

10.    In *Spade*, the court found that the case was "little more than a two-party collections dispute" between the petitioning creditor and debtor, and that "[t]here is no need for a federal court to resolve this two-party dispute that implicates purely state law issues." *Id*. at 234-235. Furthermore, the court found that "[b]ringing this case into the bankruptcy court would only add an additional layer of expense to the resolution of this two-party case. *Id*. at 236.

Finally, the court found that other creditors would be prejudiced by continuation of the bankruptcy case, as they would incur additional expenses. *Id.* at 236-37.

11. In *In re ELRS Loss Mitigation, LLC,* 325 B.R. 604 (Bankr. N.D. Okla. 2005), the court dismissed a Chapter 7 petition under Section 303 because the debtor was generally paying its debts as they came due, and also held that if the case were not dismissed under Section 303, it would be dismissed under Section 305. The bankruptcy case was a two-party dispute, and other creditors had not joined the petitioning creditor to support the bankruptcy petition. *Id.* at 634.

12. Movants argue that the motivation for this bankruptcy petition is bad faith. Gaston seeks to delay a judicial determination that he is individually liable for a judgment taken against Gaston Premier Homes, Ltd., and attempting to defeat the State of Texas's regulatory scheme of receivership. Movants suggest that Gaston has chosen to use the bankruptcy court as a litigation strategy to deprive Johnson and the Receiver of collecting upon the assets of Gaston Premier Homes, Ltd., currently held by the Receiver.

13. The Court agrees that this is essentially a two-party collection dispute and there is no evidence that Gaston Premier Homes, Ltd. has any other substantial debts. Debtor lists only Champion Drywall and First Insurance Funding as potential creditors not involved in the underlying lawsuit and said claims against Debtor amount to a mere $1,662.24 of the total debt owed to Johnson of $121,876.55.

14. The Debtor contends that even if this were a two-party dispute, that alone would not be cause for dismissal. *Deglin v. Keobapha*, 279 B.R. 49 (Bankr. D. Conn. 2002); 6 *Collier on Bankruptcy* 707-18. However, the Debtor's Schedules filed in this case show eight parties-in-interest other than the Debtor: seven creditors and one lessee. In addition, since the filing of the Schedules, another creditor has come to light: Debtor cites Far West Capital who claims to own

the accounts receivable of a subcontractor, Minyard Services, Inc., who performed work on one of the Debtor's projects, and thus to be owed the unpaid balance of $3,691.98.

15. Further, Debtor argues that one of the creditors on the Schedules is another unpaid subcontractor from the same project, Champion Drywall. Thus, there are two subcontractors who were not paid for work on that project. Nevertheless, the Movant Receiver intercepted the final $3,000.00 payment to the Debtor for that project and kept those funds rather than use them to pay these subcontractors, who are "beneficiaries" of the trust funds as they furnished labor or materials in the direct prosecution of the work under the construction contract for that specific project prior to the receipt of the trust funds. *See* Texas Prop. Code §§162.001 ff. Neither Movant (the Receiver or Johnson) is a beneficiary.

16. The Debtor believes that an impartial trustee under supervision of this Court will be less costly and will serve the interests of all creditors and the Debtor, rather than just Movants.

17. Here, the Movants clearly have the better argument. The record is replete with instances of where Gaston did not observe corporate/business formalities as to BCH, GPH, or Wet-Tech. He intermingled funds and did not explain adequately the basis for the transfers, loans, or payments between those entities. More importantly, Gaston could not explain or prove the loans between himself, GPH, or BCH. Gaston's exhibits 1-8 which purport to show the transfers, loans, and payments between GPH and BCH, and the loans between Gaston and GPH, are not supported by cancelled checks, invoices, loan documents or corporate records. As such, they are not competent evidence.

18. As a result of the Debtor's and Gaston's inability to demonstrate how corporate loans and debts were paid, it is problematic that the Debtor maintained any corporate existence

after the first quarter of 2008. Gaston acknowledged as much on examination. Further, the evidence shows that the Debtor has conducted no business over the past 18 months. Gaston has also failed to maintain adequate business records over that time. These factors would contribute to a Chapter 7 trustee's difficulty in administering a Chapter 7 estate.

19. More importantly, the Movants correctly argue that this is a two-party dispute. There are virtually no assets to administer and few creditors outside this dispute. Any potential causes of action appear on this record to be non-existent other than what the Receiver has already filed. The record does not suggest that the Debtor was threatened with suit or collection other than the Receiver's actions.

20. The Court also agrees that the state court proceedings are more than adequate to resolve any remaining issues and adjudicate whether the Lake House should be an asset that the Receiver may administer. This case will not facilitate the resolution of this matter any sooner than the current state court proceedings. As such, this Court will dismiss this matter under section 305.

21. Third, the Movants ask that this Court dismiss this case under section 707(a) as a bad faith filing.

22. Section 707(a) of the Bankruptcy Code provides in relevant part: "The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including— unreasonable delay by the debtor that is prejudicial to creditors; nonpayment of any fees or charges required under chapter 123 of title 28; and failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee." 11 U.S.C. §707(a). Any party in interest, including a non-

15

petitioning creditor, may make a motion to dismiss under Section 707. *See In re Jr. Food Mart of Arkansas*, 234 B.R. 420, 421-22 (Bankr. E.D. Ark. 1999); *In re MacFarlane Webster Assocs.*, 121 B.R. 694, 696-97 (Bankr. S.D.N.Y. 1990).

23. The Debtor argues that at least one Circuit Court has held that, due to the differences between Chapter 7, on the one hand, and Chapters 11 and 13, on the other, "bad faith" can be a "cause" for dismissal in Chapters 11 and 13 but not in Chapter 7. *In re Padilla*, 222 F.3d 1184, 1193 (9th Cir. 2000). The court noted that the debtor keeps its assets and has a "protracted relationship" with its creditors in Chapters 11 and 13, and both of those chapters require a plan and have a "good faith" requirement in connection with that, whereas Chapter 7 has none of that and contains no mention of "good faith" or "bad faith." *Id.* Other courts have held that considering "bad faith" in filing to be "cause" for dismissal under Section 707(a) should "be limited to extreme misconduct." *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994); *In re Kahn*, 172 B.R. 613, 624-26 (Bankr. D. Minn. 1994).

24. The Court finds that a finding of bad faith under section 707(a) should be in the most extreme of circumstances. While there has been a delay to creditors, and a failure to account for the transfer of moneys, the more appropriate remedy is to dismiss this case under section 305. As such, this remedy is denied as the request for dismissal under section 105.

All other relief not expressly ruled on is DENIED. Both parties are to bear their own costs.

###